Gregory B. Smith (6657)
GREG SMITH AND ASSOCIATES
7324 S Union Park Ave. Suite 101
Midvale, Utah 84074
(801)-641-3397
gs@justiceinutahnow.com

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BENJAMIN DRABIK,<br>　　　　　Plaintiff,<br><br>vs.<br><br>ALDOUS & ASSOCIATES, P.L.L.C.,<br>TYLER RICE, JACOB SEASTRAND,<br>ZAKARI BOGDEN, and JOHN DOES 1-<br>10<br>　　　　　Defendants. | **COMPLAINT AND JURY DEMAND**<br>*(Fair Labor Standards Act, Utah Payment of Wages Act, Utah Sales Representative Commission Payment Act, Spoliation of Evidence, Intentional Infliction of Emotional Distress)*<br><br>**JURY TRIAL DEMANDED**<br><br>Case TBD<br><br>Judge TBD |

Plaintiff Benjamin Drabik, by and through undersigned counsel, Gregory B. Smith of Greg Smith and Associates, complains of Defendants Aldous & Associates, P.L.L.C., Tyler Rice, Jacob Seastrand, Zakari Bogden, and John Does 1–10, and alleges as follows:

### NATURE OF THE ACTION

1. This civil action arises out of Defendants' unlawful wage practices directed at Plaintiff during his employment as a debt collector from approximately January 16, 2023, until his constructive termination effective March 2, 2026.

2. During Plaintiff's employment, Defendants required or permitted Plaintiff to work substantial overtime hours without paying the overtime premium required by the Fair Labor Standards Act, diverted commissions generated by Plaintiff's work, imposed

pretextual commission claw backs and deductions, and failed to pay accrued paid time off at separation.

3. Plaintiff further alleges that, after Plaintiff raised concerns regarding wage practices and submitted notice of resignation, Defendants retaliated by revoking Plaintiff's access to timekeeping, payroll, commission, and tax records, including his 2025 Form W-2, and altered or failed to preserve relevant timekeeping data material to Plaintiff's wage claims.

4. Plaintiff brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.; the Utah Payment of Wages Act ("UPWA"), Utah Code Ann. §§ 34-28-1 et seq.; the Utah Sales Representative Commission Payment Act, Utah Code Ann. §§ 34-44-101 et seq.; and Utah common law.

5. Plaintiff seeks unpaid overtime compensation and liquidated damages under the FLSA, unpaid and unlawfully diverted or clawed-back commissions, treble damages where authorized by Utah law, unpaid accrued PTO, compensatory and punitive damages where available, attorneys' fees and costs, adverse evidentiary inferences and other sanctions related to record destruction or concealment, and all other appropriate legal and equitable relief.

6. Plaintiff further alleges that Defendants' conduct was willful and malicious and reserves all rights to assert, in any later bankruptcy proceeding, if necessary, that any resulting judgment debt is non-dischargeable under 11 U.S.C. § 523(a)(6).

## JURISDICTION AND VENUE

7. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the FLSA.

8. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal wage-and-hour claims.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in

this District, conduct substantial business in this District, and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## II. PARTIES

10. Plaintiff Benjamin Drabik is an individual residing in Salt Lake County, Utah.

11. Plaintiff worked for Defendants as a debt collector from approximately January 16, 2023, until March 2, 2026.

12. Defendant Aldous & Associates, P.L.L.C. ("Aldous") is a Utah professional limited liability company with its principal place of business in or near Holladay, Utah, engaged in debt collection and related activities.

13. Defendant Tyler Rice is an individual resident of Utah and, on information and belief, the owner and principal decision-maker of Aldous.

14. At all relevant times, Rice exercised operational and financial control over Plaintiff's wages, hours, discipline, and working conditions.

15. Defendant Jacob Seastrand is an individual resident of Utah who served as Human Resources Manager for Aldous and, on information and belief, used the alias "Larry Wood" during Aldous's operations.

16. At all relevant times, Seastrand exercised authority over Plaintiff's employment terms, audits, and wage-related issues.

17. Defendant Zakari Bogden is an individual resident of Utah who served as a supervisor over Plaintiff and, on information and belief, used the alias "Jim Williams" during Aldous's operations.

18. At all relevant times, Bogden directly supervised Plaintiff and made key decisions regarding Plaintiff's audits, coaching, and wage-related matters.

19. At all relevant times, each Individual Defendant acted directly or indirectly in the interest of Aldous with respect to Plaintiff and functioned as Plaintiff's employer or joint employer within the meaning of the FLSA and applicable Utah law.

### III. FACTUAL ALLEGATIONS

### A. Commission Diversion and Claw Backs

20. Aldous maintained written policies and practices requiring Plaintiff and similarly situated collectors to transfer certain categories of calls to supervisors, after which supervisors received commission credit for resulting payments even where the collector had performed the substantive work that generated the payment.

21. Pursuant to those policies and practices, supervisors routinely took credit for payments that Plaintiff had effectively generated, thereby diverting commissions away from Plaintiff.

22. As a direct result of Defendants' commission-diversion policies, Plaintiff estimates that he lost at least substantial commissions, conservatively estimated at approximately $250,000, with the precise amount to be determined through discovery of Defendants' transfer logs, settlement approvals, and commission-allocation records.

23. A specific example occurred on or about January 7, 2026, when Plaintiff handled a debtor who requested a hardship settlement and, following policy, transferred the call to a supervisor, who then secured a settlement and took the commission.

24. Plaintiff further alleges that Defendants used audits and internal compliance rationales, including alleged "loss of sticky" and similar asserted violations, to retroactively claw back earned commissions for pretextual reasons.

25. Those claw backs resulted in at least $11,598 in deductions from Plaintiff's commissions, including approximately $1,598 in February 2026 tied to a debtor's double-payment error outside Plaintiff's control.

26. Plaintiff also alleges that Defendants selectively bent or enforced commission and settlement policies to favor insiders and relatives while denying corresponding commission credit to Plaintiff.

### B. Overtime and Timekeeping

27. Defendants required employees, including Plaintiff, to log into internal systems such as Collect! and TCN promptly after clocking in through Bamboo and to perform pre-shift and post-shift tasks integral and indispensable to their principal work.

28. These policies and practices required or permitted compensable off-the-clock and overtime work for which Defendants failed to pay the legally required overtime premium.

29. Plaintiff's base hourly wage increased during his employment as follows: $15 per hour from January 16, 2023, through January 2024; $16 per hour from January 2024 through January 2025; $17 per hour from February 2025 through March 2025; and $18 per hour from April 2025 through March 2, 2026.

30. Between approximately March 16, 2023, and February 13, 2026, Plaintiff worked at least 455.71 documented overtime hours for which he did not receive the required overtime premium, and the true total is higher because relevant records were altered, withheld, or unavailable.

31. Timecards from January 16, 2023, to March 2, 2023, are unavailable because they predate Aldous's change in payroll companies.

32. Defendants tracked Plaintiff's hours through Bamboo, Collect!, and related systems and knew or should have known that Plaintiff regularly worked more than forty hours in one or more workweeks without proper overtime compensation.

33. Plaintiff regularly performed pre-shift and post-shift tasks, including logging into and out of required systems, wrapping up calls and accounts, and handling account-related work outside scheduled hours, without receiving the overtime premium required by law.

34. From approximately April 2023 through December 2025, Plaintiff earned monthly commissions ranging from approximately $811 to more than $3,200, averaging about $1,900 per month, and in March 2026 received an additional bonus of approximately $8,000; these amounts increased his regular rate for FLSA overtime purposes."

35. In later periods when Plaintiff's base rate was $18 per hour, Plaintiff's regular rate often

approached or exceeded approximately $30 per hour, producing an additional half-time overtime premium of roughly $15 per overtime hour.

### C. Record Revocation, Alteration, and Withholding

36. On February 16, 2026, Plaintiff submitted notice of resignation, with March 2, 2026, set as his final day of employment.

37. By that time, Plaintiff had raised concerns regarding Defendants' wage practices, including unpaid overtime, commission diversion, and pretextual audits and claw backs.

38. On March 2, 2026, Defendants revoked Plaintiff's access to his timecards and timekeeping data, preventing him from fully documenting his overtime hours and commission earnings.

39. On the same day, Defendants also revoked Plaintiff's access to his 2025 Form W-2 and other wage-related records.

40. On information and belief, before or in connection with revoking access, Defendants altered Plaintiff's timekeeping data to conform to internal "idle time" measurements, thereby understating compensable hours and overtime.

41. Defendants knew or reasonably should have known that Plaintiff was asserting or would assert claims for unpaid wages and overtime when they revoked access to, withheld, altered, or failed to preserve those records.

42. Because Defendants cut off or limited Plaintiff's access to payroll, commission, bonus, and timekeeping records, Plaintiff has been forced to rely in part on contemporaneous records, reasonable estimates, and inferences from the records Defendants controlled.

43. Under *Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946)*, where an employer fails to keep or produce accurate records, an employee may prove damages by just and reasonable inference, and the resulting uncertainty is resolved against the employer.

44. Plaintiff will seek through discovery complete call-transfer logs, settlement approvals, commission-allocation reports, payroll records, bonus records, and timekeeping data for

the period January 16, 2023, through March 2, 2026.

### D. Unpaid Accrued PTO

45. At the time of Plaintiff's separation, Plaintiff had 120 hours of accrued paid time off, valued at approximately $2,160 based on his $18 hourly rate.

46. Plaintiff's PTO accrual and balance were tracked in Defendants' BambooHR system in the same manner as other wage-related data.

47. Plaintiff alleges that Defendants did not disclose any policy under which accrued PTO would automatically be forfeited upon separation and that Plaintiff reasonably understood the accrued PTO to be earned and vested compensation.

48. Defendants did not pay Plaintiff for that accrued PTO upon separation.

### E. Emotional Harm

49. As a result of the conduct alleged herein, Plaintiff has suffered financial stress, anxiety, insomnia, depression, and related emotional and physical symptoms.

50. Plaintiff further alleges that Defendants' conduct occurred in the context of a significant power imbalance because Defendants controlled Plaintiff's income and access to wage and tax records and used that control to pressure, isolate, and punish Plaintiff after he raised wage-related concerns.

### IV. CAUSES OF ACTION

### COUNT I – FLSA: UNPAID OVERTIME AND LIQUIDATED DAMAGES (WILLFUL)

51. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

52. Defendants are "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d), and Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e).

53. At all relevant times, Defendants were engaged in commerce or in the production of goods for commerce, or were part of an enterprise engaged in commerce within the meaning of 29 U.S.C. §§ 203 and 207.

54. On information and belief, Aldous had annual gross volume of sales made or business done of not less than $500,000 and its employees regularly handled interstate communications, accounts, payments, data, and instrumentalities of interstate commerce.

55. Defendants violated 29 U.S.C. § 207 by failing to pay Plaintiff overtime compensation at one-and-one-half times his regular rate of pay for all hours worked over forty in a workweek.

56. Defendants required or permitted Plaintiff to perform compensable pre-shift, post-shift, and overtime work and tracked Plaintiff's work through Bamboo, Collect!, and related systems.

57. Between approximately March 16, 2023, and February 13, 2026, Plaintiff worked at least 455.71 overtime hours for which he was not paid the required overtime premium, with the precise total to be determined through discovery and reasonable inference based on available evidence.

58. Under 29 C.F.R. § 778.109, Plaintiff's regular rate included not only his base hourly wage, but also nondiscretionary commissions and bonuses earned during the relevant workweeks.

59. Because Defendants controlled and then withheld, revoked access to, altered, or failed to preserve timekeeping and compensation records, Plaintiff is entitled under *Anderson v. Mt. Clemens Pottery Co.* to prove his overtime hours and regular rate by just and reasonable inference.

60. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a), and the three-year limitations period applies.

61. As a direct and proximate result of Defendants' conduct, Plaintiff suffered unpaid overtime damages in an amount to be proven at trial, together with liquidated damages, attorneys' fees, and costs under 29 U.S.C. § 216(b).

**COUNT II – UTAH PAYMENT OF WAGES ACT AND UTAH SALES REPRESENTATIVE COMMISSION PAYMENT ACT**

62. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

63. Defendants are employers within the meaning of the UPWA, and Plaintiff was their employee within the meaning of that Act.

64. Plaintiff also qualifies as a sales representative within the meaning of Utah Code Ann. § 34-44-102 because he solicited and obtained payments on accounts and services and was compensated in substantial part by commissions.

65. Through written policies, handbooks, and an established course of dealing, Defendants created enforceable agreements regarding Plaintiff's entitlement to commissions on payments he generated and on accounts on which commissions became due when payments were secured or posted.

66. Defendants systematically diverted, clawed back, deducted, and refused to pay commissions that Plaintiff had earned, including by requiring him to transfer certain calls to supervisors who then took the commission credit and by using pretextual audits to retroactively remove commission credits.

67. Defendants also withheld accrued PTO that Plaintiff had earned and that functioned as vested deferred compensation or wages.

68. Under the UPWA and the Utah Sales Representative Commission Payment Act, Plaintiff is entitled to recover unpaid commissions, unlawful deductions or claw backs, unpaid PTO, treble damages where authorized, prejudgment interest, and reasonable attorneys' fees and costs.

69. Plaintiff's unpaid and underpaid commissions and clawed-back amounts are conservatively estimated at approximately $250,000 in diverted commissions plus at least $11,598 in documented clawbacks, plus approximately $2,160 in unpaid accrued

PTO, with the precise amount to be determined through discovery and proof at trial.

## COUNT III – SPOLIATION-RELATED SANCTIONS, ADVERSE INFERENCES, AND OTHER REMEDIAL RELIEF

70. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

71. By the time Defendants revoked Plaintiff's access to timekeeping, payroll, commission, and tax records and altered or failed to preserve relevant timekeeping data, Defendants knew or reasonably should have known that such records were material to anticipated wage-and-hour claims and to likely litigation.

72. The relevant records, including timecards, payroll records, commission records, call-transfer logs, settlement approvals, and related electronic data, were within Defendants' possession, custody, or control.

73. Defendants' revocation of access to those records, and the alteration, withholding, concealment, or failure to preserve them, has impaired Plaintiff's ability to prove the full extent of his overtime hours, regular rate, commissions, deductions, and other wage damages.

74. As a result, Plaintiff is entitled to appropriate remedial relief from this Court, including adverse evidentiary inferences, evidentiary presumptions, burden-shifting consequences where authorized by law, additional discovery, curative measures, monetary sanctions, fee-shifting, and such other relief as the Court deems just under the Federal Rules of Civil Procedure, the Court's inherent authority, and the evidentiary principles recognized in *Anderson v. Mt. Clemens Pottery Co.*

75. Plaintiff specifically seeks an inference, to the extent supported by the evidence developed in discovery, that missing, altered, concealed, or withheld records would have shown additional uncompensated overtime, a higher regular rate, and commission allocations or transfers more favorable to Plaintiff than reflected in the limited records

presently available.

76. Plaintiff further alleges that Defendants' record-related conduct was willful and malicious, and Plaintiff reserves all rights to rely on those findings or underlying facts in any subsequent proceeding concerning dischargeability under 11 U.S.C. § 523(a)(6).

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

78. Defendants engaged in extreme and outrageous conduct by intentionally manipulating wage and commission practices to deprive Plaintiff of earned income, using audits and timekeeping practices as tools to impose fabricated or pretextual claw backs, publicly shaming Plaintiff in connection with wage-related disputes, and revoking and altering access to Plaintiff's own wage and tax records when Defendants knew Plaintiff was asserting wage-related rights.

79. Defendants knew, or recklessly disregarded the near certainty, that such conduct would cause Plaintiff severe emotional distress.

80. Defendants' conduct exceeded the bounds of decency tolerated in a civilized community, particularly given Defendants' control over Plaintiff's wages, tax records, and employment-related information and the alleged use of that control to punish Plaintiff for raising wage concerns.

81. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered severe emotional distress, including anxiety, depression, insomnia, and related physical and psychological symptoms, and has required or will require treatment.

82. Plaintiff is entitled to recover compensatory and, to the extent permitted by law and proven at trial, punitive damages.

## V. DAMAGES

83. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered economic

damages including unpaid overtime premiums, diverted commissions, clawed-back commissions, and unpaid accrued PTO, in amounts to be determined through discovery and proven at trial.

84. Plaintiff also seeks liquidated damages under the FLSA, treble damages to the extent authorized under Utah law on qualifying commission amounts, prejudgment and post-judgment interest where authorized, attorneys' fees and costs, and compensatory and punitive damages where legally available.

85. Plaintiff further seeks all evidentiary and monetary relief warranted by Defendants' record destruction, concealment, alteration, withholding, or failure to preserve evidence relevant to Plaintiff's wage claims.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, jointly and severally where permitted by law, as follows:

A. For compensatory, statutory, and punitive damages in a total amount to be proven at trial, but in no event less than $400,000.

B. For unpaid overtime compensation and an equal amount as liquidated damages under the FLSA, in an amount to be proven at trial.

C. For unpaid and underpaid commissions, unlawful deductions and claw backs, unpaid accrued PTO, and all related wages and compensation due under Utah law, including treble damages to the extent authorized by statute, in an amount to be proven at trial.

D. For compensatory damages for emotional distress and related harm in an amount to be proven at trial.

E. For punitive damages to the extent permitted by law and supported by the evidence.

F. For adverse evidentiary inferences, curative measures, additional discovery, fee-shifting, monetary sanctions, and such other remedial relief as the Court deems appropriate in response to Defendants' withholding, alteration, destruction, concealment, or failure to

preserve relevant records.

G. For injunctive or equitable relief as permitted by law, including relief requiring Defendants to provide accurate wage and tax records and to correct unlawful wage and record-keeping practices.

H. For reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), the UPWA, the Utah Sales Representative Commission Payment Act, and other applicable law.

I. For prejudgment and post-judgment interest as permitted by law.

J. For findings, where supported by the evidence, that Defendants' conduct was willful and malicious, and for reservation of Plaintiff's right to assert in any subsequent bankruptcy proceeding that any resulting debt is non-dischargeable under 11 U.S.C. § 523(a)(6).

K. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


DATED this 18th day of April 2026.

/s/ Gregory B. Smith
*Attorney for Plaintiff*